

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | | |
|---|---|---|
| MICHELLE MARIE DARLING, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 3:23-6292-MGL |
| | § | |
| DIRECTOR OF U.S. CITIZENSHIP AND | § | |
| IMMIGRATION SERVICES, | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTIONS TO DISMISS
## FOR LACK OF SUBJECT MATTER JURISDICTION

## I.    INTRODUCTION

Plaintiff Michelle Marie Darling (Darling) brought this action against Defendant Director of

U.S. Citizenship and Immigration Services (USCIS).  She brings two allegations under the

Administrative Procedure Act (APA): (1) USCIS unconstitutionally retaliated against her, and (2)

USCIS was arbitrary and capricious in its denial of her I-485 application for adjustment of status.

Pending before the Court is USCIS's motion to dismiss for lack of subject matter jurisdiction,

under Fed. R. Civ. P. 12(b)(1).  Having carefully considered the motion, the response, the reply, the

record, and the applicable law, it is the judgment of this Court USCIS's motion to dismiss will be

granted.

## II.     FACTUAL AND PROCEDURAL HISTORY

"Darlin[g] is a citizen and national of Jamaica.  She . . . currently resides in Columbia, SC." Amended Complaint ¶ 1.  "USCIS is charged with adjudicating immigration benefits petitions.  It is responsible for making final decisions on immigrant visas and adjustment of status petitions." *Id*. ¶ 2.

"On May 16, 1994, . . . Darling married her first husband." *Id*. ¶ 10.  "The couple separated permanently a few years later." *Id*. ¶11.  "Darling then immigrated to the United States and met the man who would become her second husband." *Id*. ¶ 12.

"On July 16, 1997, . . . Darling married her second husband." *Id*. ¶ 13.  "The couple sought the advice of an immigration attorney." *Id*. ¶ 14.  Darling claims "[t]he immigration attorney told [her she] did not need to disclose [her] first marriage in Jamaica on the immigration paperwork because [her] Jamaican marriage was not valid for United States immigration purposes." *Id*. ¶ 15.

"[Although] the attorney gave . . . Darling advice, the couple completed the paperwork on their own." *Id*. ¶ 16.  "Eventually, they met the immigration attorney at the immigration office in New York just before the interview." *Id*. ¶ 17.

"USCIS approved their applications and . . . Darling became a lawful permanent resident on June 21, 1999." *Id*. ¶ 18.  According to Darling, "[w]hen she filed for these immigration benefits, she was under the belief . . . her first marriage was not valid for immigration purposes." *Id*. ¶ 19. "The couple would then file Form I-751 [Petition to Remove Conditions on Residence], which USCIS again approved without issue." *Id*. ¶ 20.

"In 2004, . . . Darling sought to marry her third husband and that's when she learned her first marriage was never terminated." *Id*. ¶ 21.  "Darling then ended her first marriage through divorce

and her second marriage through an annulment." *Id*. ¶ 22. "Darling married a third time in 2004, and she divorced in 2007." *Id*. ¶ 23.

"In 2013, . . . Darling completed a naturalization application." *Id*. ¶ 24. "She disclosed her charges and her convoluted marriage history." *Id*. ¶ 25. "In 2013, she attended a naturalization interview at the Philadelphia Field Office." *Id*. ¶ 26. "During her interview, she fully explained the bad legal advice she received in the 1990s, the subsequent divorces and annulments, and the criminal charges." *Id*. ¶ 27. "The Philadelphia Field Office . . . den[ied] her naturalization application because her second marriage was void ab initio and it was the basis for her lawful permanent residence." *Id*. ¶ 28.

"In an effort to fix this technical defect, in 2016, one of . . . Darling's United States citizen children filed an immigrant visa petition on her behalf." *Id*. ¶ 29.

"Darling [subsequently] filed [a Form I-485] adjustment of status application.  USCIS received it on December 2, 2016[.]" *Id*. ¶ 31. "On September 9, 2022, . . . Darling . . . applied to naturalize as a United States citizen." *Id*. ¶ 33. "USCIS denied the application, claiming that she did not acquire lawful permanent residency because her second marriage was not valid (as her first marriage was not lawfully terminated at the time she was married the second time)." *Id*. ¶ 34.

"To get a decision on her . . . Form I-485, . . . Darling initiated this case against USCIS in December of 2023." *Id*. ¶ 35. "USCIS assigned the . . . application to Laura Haynie [(Haynie)], an adjudicator at the Charleston Field Office." *Id.* ¶ 36. Darling maintains "[t]he Charleston Field Office assigns all adjudications that are in litigation to . . . Haynie." *Id.* ¶ 37.

3

"Haynie denied . . . Darling's Form I-485 on June 3, 2024[.]" *Id*. ¶ 70 (d).  Darling alleges

Haynie did so "because she wanted to retaliate for filing this case." *Id*. ¶ 52.  According to Darling,

"Haynie's retaliatory denial harms [her]." *Id*. ¶ 59.

Darling states "[s]he remains a lawful permanent resident, but she cannot qualify for

naturalization until she 'fixes' the defect in her status." *Id*. ¶ 61.

In Darling's prayer for relief, she requests the Court:

      1.     Take jurisdiction over this case;

      2.     Set aside the I-485 denial and order USCIS to assign a new adjudicator to re-adjudicate . . . Darling's green card application without reference to any notes, comments, or analyses by . . . Haynie[;]

      3.     Order USCIS to pay [Darling's] reasonable attorneys fees under the Equal Access to Justice Act or another provision of law; and

      4.     Any further order that justice requires.

Amended Complaint at 12-13.

As is relevant here, after USCIS filed its motion to dismiss for lack of subject matter

jurisdiction, Darling filed her response in opposition.  USCIS then filed its reply in support.

The Court, having been briefed on the relevant issues, is now prepared to adjudicate USCIS's

motion to dismiss.

## III.    STANDARD OF REVIEW

### A.    *The APA*

The APA, 5 U.S.C. § 702, provides that one "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review" under the APA.  *Id.*

Nevertheless, "[a]lthough the APA embodies a basic presumption of judicial review of final agency action, its judicial review provisions do not apply where statutes preclude judicial review." *Lee v. U.S. Citizenship and Immigration Servs.*, 592 F.3d 612, 619 (4th 2010) (citations omitted) (internal quotation marks omitted).

### B.     Rule 12(b)(1)

"A motion to dismiss an action under Rule 12(b)(1) . . . raises the fundamental question whether the federal district court has subject matter jurisdiction over the action before it."  5B Charles Alan Wright & Arthur B. Miller, Federal Practice and Procedure § 1350, at 61 (3d ed. 2004). "Federal courts are courts of limited subject matter jurisdiction, and as such there is no presumption that the court has jurisdiction." *Pinkley, Inc. v. City of Fredrick, Md.*, 191 F.3d 394, 399 (4th Cir. 1999).

"They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citations omitted).

"The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).  In fact, "[f]ederal courts have an independent duty to confirm their own jurisdiction even when . . . it [is] unquestioned by the parties." *Shaiban v. Jaddou*, 97 F.4th 263, 265 (4th Cir. 2024).

## IV.    DISCUSSION AND ANALYSIS

### A.    *Whether the Court lacks subject matter jurisdiction to review the denial of Darling's I-485 application*

USCIS maintains, "[b]ecause [Darling's] claims challenge the denial of her I-485 application for adjustment of status, they fall within the category of decisions that are insulated from judicial review."  USCIS's Motion at 5.  "Therefore," according to USCIS, "the Court lacks subject matter jurisdiction over [Darling's] claims and dismissal is appropriate."  *Id*.

Darling, however, counters "Section 1252(a)(2)(B) is inapposite because it precludes review of denials of relief from removal (or deportation), not challenges to 'benefit request' denials."  Darling's Response at 2.  "To the extent it applies here," Darling maintains, "§ 1252(a)(2)(B)(i) does not preclude judicial review of questions of law or constitutional challenges."  *Id*.

Before delving into the jurisdictional question, the Court will set forth the two relevant statutes at play here.

An immigrant uses a 1–485 application when seeking an adjustment of status.  Then, as is apposite here, in accordance with 8 U.S.C. § 1255(a),

> [t]he status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

*Id.* Or, to put it more succinctly, Section 1255(a) authorizes the Attorney General, "in his discretion and under regulations as he may prescribe," *id.*, to adjust to permanent residence status certain immigrants who have been admitted into the United States.

Though the text of § 1255(a) gives the Attorney General the authority to adjudicate adjustment of status applications, that authority has since been transferred to the Secretary of Homeland Security and his delegate in USCIS.  6 U.S.C.A. § 271(b)(5); 6 U.S.C.A. 557.

Regarding judicial review of USCIS's decisions, Section 1252(a)(2)(B) provides, as is relevant here, the following:

> Notwithstanding any other provision of law (statutory or nonstatutory), . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review–
>
> (i)     any judgment regarding the granting of relief under section . . . 1255 of this title, or
>
> (ii)    any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]

*Id.*

Turning now to the jurisdictional question presented here, "[t]he [Immigration and Nationality Act (INA)] specifically closes the door to judicial review of certain discretionary agency decisions, including the denial of an application for adjustment of status[.]"  *Lee*, 592 F.3d at 619; *see* Section 1252(a)(2)(B)(i) ("[N]o court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1255 of this title[.]").

Here, Darling 1–485 filed her application for an adjustment of status.  Thus, as per the plain language of INA, this Court lacks jurisdiction to entertain Darling's APA claims.

As the Court stated above, "[a]lthough the APA embodies a basic presumption of judicial review of final agency action, its judicial review provisions do not apply where statutes preclude judicial review." *Lee*, 592 F.3d at 619 (citations omitted) (internal quotation marks omitted).

But, what about Darling's contention "Section 1252(a)(2)(B) is inapposite because it precludes review of denials of relief from removal (or deportation), not challenges to 'benefit request' denials[ ]"? Darling's Response at 2. As USCIS stated in its Reply, "the Fourth Circuit dispensed with this argument in *Shaiban*[.]" USCIS's Reply at 2.

In that case, the Fourth Circuit held decisions made outside the removal context are unreviewable by this Court under § 1252(a)(2)(B). *Shaiban*, 97 F.4th at 267. "Any other conclusion is difficult to square with the language of the beginning of § 1252(a)(2)(B), which states courts shall not have the jurisdiction to hear cases enumerated in subclauses (i) and (ii) 'regardless of whether the judgment, decision, or action is made in removal proceedings.'" *Id*.

### B.     *Whether Darling can overcome the jurisdictional bar by couching her claims as constitutional violations*

USCIS maintains Darling "cannot evade [the] jurisdictional bar by calling her claims constitutional violations." USCIS's Motion at 5 (emphasis omitted) (capitalizations modified). Darling claims, however, "USCIS seeks to deprive . . . Darling of all review of her constitutional claims. This Court must interpret § 1252(a)(2)(B) to avoid such a result to comport with the Constitution." Darling's Response at 7.

But, Darling's argument the Court has jurisdiction to consider her APA claims is untethered to any controlling precedent in this circuit. In fact, the Fourth Circuit has long held "[t]he express language of the statute requires [a plaintiff] to raise any constitutional or legal questions 'upon a petition for review filed with an appropriate court of appeals." *Lee*, 592 F.3d at 620 (quoting 8 U.S.C. § 1252(a)(2)(D)). "To the extent Congress decided to permit judicial review of a

8

constitutional or legal issue bearing upon the denial of adjustment of status, it intended for the issue to be raised to the court of appeals during removal proceedings." *Id*. (emphasis omitted).

The Supreme Court, in *Wilkinson v. Garland*, 601 U.S. 209 (2024), also recognized, "Section 1252(a)(2)(D) provides that a court of appeals may consider final orders of removal via petitions raising constitutional claims or questions of law." *Id* at 217(internal quotation marks omitted).

Thus, even with constitutional claims, "the district court [does] not have jurisdiction to entertain [a plaintiff's] challenge to [USCIS's] eligibility determination and subsequent denial of adjustment of status." *Lee*, 592 F.3d at 621. Again, "[t]he statute specifically provides . . . the exclusive means of judicial review of a legal issue related to the denial of an adjustment of status is by a petition for review to the court of appeals."

Although "there [may well be] valid public policy arguments to maintain judicial review of [Darling's constitutional] claims and others that petitioners in similar situations may raise, policy concerns cannot trump the best interpretation of the statutory text." *Shaiban*, 97 F.4th at 268. "[N]o amount of policy-talk can overcome a plain statutory command." *Niz-Chavez v. Garland*, 593 U.S. 155, 171 (2021).

## V.     CONCLUSION

Based on the foregoing discussion and analysis, it is the judgment of the Court USCIS's motion to dismiss for lack of subject matter jurisdiction is **GRANTED**. Darling's case is therefore **DISMISSED WITH PREJUDICE**. *See Roland v. United States Citizenship & Immigration Servs*., 850 F.3d 625, 628 (4th Cir. 2017) (affirming the district court's dismissal with prejudice for lack of subject matter jurisdiction in an instance in which a "statutory provision eliminates judicial review of discretionary decisions made by the USCIS.").

    **IT IS SO ORDERED**.

Signed this 31st day of March, 2025, in Columbia, South Carolina.

/s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE